# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JINDAL STEEL BOLIVIA S.A.,<br>    Calle Los Jazmines No. 550,<br>    Barrio Sirari, Santa Cruz de la Sierra,<br>    Departamento de Santa Cruz, Bolivia<br><br>                    *Petitioner*,<br><br>            v.<br><br>EMPRESA SIDERÚRGICA DEL MUTÚN<br>    Avenida Mariscal Sucre, Manzana 3,<br>    Edificio Jindal, Zona Suárez Arana<br>    Paradero, Puerto Suárez, Bolivia<br><br>    Avenida Libertador Simón Bolívar<br>    Entre la calle Antofagasta y la calle Dr. Reyes s/n.<br>    Puerto Suárez, Bolivia<br><br>                    *Respondent*. | Civil Action 1:17-cv-1581 |

## PETITION TO CONFIRM ARBITRATION AWARD

Petitioner Jindal Steel Bolivia S.A. ("JSB"), by its attorneys, White & Case LLP, alleges as follows in support of its Petition to Confirm Arbitration Award under 9 U.S.C. §§ 207, 302, 304 and 305: (a) confirming and recognizing the August 6, 2014 Award (the "Award") issued in an arbitration under the auspices of the International Chamber of Commerce ("ICC") and captioned Jindal Steel Bolivia S.A. v. Empresa Siderúrgica del Mutún, Case No. 18398/CA, subsequently re-captioned as Case No. 18398/CA/ASM (the "Arbitration"); (b) directing entry of judgment in accordance therewith, including interest and costs; and (c) awarding Petitioner such other and further relief as the Court deems just and proper.

## INTRODUCTION

1.      JSB is seeking confirmation and recognition of the Award issued by an ICC

arbitral tribunal after a lengthy arbitration against Respondent Empresa Siderúrgica del Mutún ("ESM"), a Bolivian state-owned company. The Award provided JSB an award of $18 million (plus interest), on JSB's claim asserted in connection with a venture related to the El Mutún iron ore deposit in Bolivia. The parties agreed to resolve their disputes through ICC arbitration, and the Award was binding when issued by the arbitration tribunal in August 2014. After the tribunal rejected ESM's attempts to re-arbitrate or annul the favorable result for JSB reflected in the Award, ESM initiated a judicial proceeding without notice to JSB to (i) overturn the tribunal's rejection of ESM's annulment application and (ii) annul the Award. JSB had no meaningful opportunity to participate in those Bolivian judicial proceedings, and, not surprisingly given its track record, the state-owned ESM received what it wanted from the Bolivian court: a free pass in the form of a purported annulment of the Award. Tellingly, JSB only learned of the Bolivian court's annulment decision when it was presented by Bolivian state officials at the outset of a previously scheduled meeting with JSB held in Washington, D.C. Not coincidentally, the annulment decision was issued just prior to the previously scheduled meeting with JSB. The Bolivian court disregarded the parties' arbitration and due process, and this Court has full authority to give proper effect to the parties' arbitration, in keeping with due process and applicable law and treaties. Particularly given that JSB was denied due process by ESM's actions, the Bolivian Court's annulment decision does not warrant deference by this Court and the Award should be confirmed.

## THE PARTIES

2.    JSB is a corporation organized under the laws of the Plurinational State of Bolivia ("Bolivia"), is qualified to do business in that country and maintains its principal offices and facilities in Santa Cruz, Bolivia. The mailing address for JSB is Calle Los Jazmines No. 550,

Barrio Sirari, Santa Cruz de la Sierra, Departamento de Santa Cruz, Bolivia.  JSB is a subsidiary of Jindal Steel & Power Limited ("JSPL")—a world-class Indian company, which is part of the O.P. Jindal Group, one of India's leading conglomerates.

3.      Upon information and belief, Respondent Empresa Siderúrgica del Mutún ("ESM") is a state-owned corporation organized under the laws of Bolivia.  Upon information and belief, the mailing addresses for ESM are Avenida Mariscal Sucre, Manzana 3, Edificio Jindal, Zona Suárez Arana – Paradero, Puerto Suárez, Bolivia, and Avenida Libertador Simón Bolívar, Entre la calle Antofagasta y la calle Dr. Reyes s/n. Puerto Suárez, Bolivia.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 28 U.S.C. § 1330(a), 1330(b), and 9 U.S.C. §§ 203 and 302.

5.      The Foreign Sovereign Immunities Act (the "FSIA") applies to these proceedings because ESM is an agency or instrumentality of Bolivia.  ESM is an organ of the Bolivian state that, upon information and belief, was created by Bolivia for purposes of developing iron ore and steel manufacturing and is controlled by the Bolivian Ministry of Mining and Metallurgy.

6.      ESM is not entitled to immunity under the FSIA because this action is brought to confirm an arbitral award, an action as to which immunity does not apply under 28 U.S.C. § 1605(a)(6).  Jurisdiction exists because ESM is not entitled to immunity and has been properly served, including according to the prior agreement between the parties.

7.      This Court also has original subject matter jurisdiction under 9 U.S.C. §§ 203 and 302 because it is a proceeding governed by the Inter-American Convention on International Commercial Arbitration (the "Panama Convention"), implemented in Chapter 3 of the Federal Arbitration Act, 9 U.S.C. § 301.  Both Bolivia and the United States are signatories to the Panama Convention.

8. Venue is proper under 9 U.S.C. §§ 204, 302 and 28 U.S.C. §§ 1391(c), (d) and (f).

## **BACKGROUND**

A. The Arbitral Proceeding

9. In 2007, JSB, JSPL and ESM, together with the Bolivian state and another Bolivian state-controlled entity called Corporación Minera de Bolivia ("COMIBOL"), executed a Joint Venture Contract (the "Contract"), under which JSB undertook to develop and exploit the Mutún iron ore reserves in the Santa Cruz department of Bolivia, a deposit estimated to contain approximately 40 billion tons of ore (the "Project"). The Contract was approved by the Bolivian Congress. (A copy and certified English translation of the Contract (without attachments) is attached to the Declaration of Jonathan C. Hamilton in Support of Petition to Confirm Arbitration Award ("Hamilton Decl.") as Ex. 1.)

10. The Project involved the exploration, mining, industrialization and commercialization of the Mutún iron ore reserves.

11. Clause 42.3 of the Contract contains an arbitration agreement, as follows:

> **Arbitration**: Any dispute or controversy with regards to or in connection with this Contract, that cannot be resolved as per the procedure set forth in the foregoing paragraph 42.1 shall be resolved by means of arbitration in accordance with what is established in Law No 1770, the Arbitration and Conciliation Law, dated March 10, 1997.
>
> The number of arbitrators shall be three (3), one (1) to be appointed by ESM, one (1) to be appointed by JSB, and the third by two (2) previously appointed arbitrators, with the consent of the disputing Parties, and it shall be that the impartial arbitrator shall not have the nationality of either of the Parties (neither Bolivian nor Indian). If the third arbitrator is not be appointed within a period of sixty (60) days, starting from the appointment of the second arbitrator, or if neither of the Parties appoints an arbitrator, then said arbitrator(s) shall be appointed in accordance with the provisions of the ICC Regulations specified hereinafter. The place of the arbitration shall be the location within the national territory defined by the members of the arbitration court. The applicable law shall be the Laws of the Republic of Bolivia. The arbitration shall be conducted in accordance with the procedures and Arbitration Regulations of the International Chamber of Commerce (ICC). The language of the arbitration shall be Spanish.

(Ex. 1 ¶ 42.3.)

12. Disputes arose in connection with the Project, including in particular as a result of ESM's moving against two cash guarantees posted by JSB, despite ESM and Bolivia's failure to provide the necessary lands for the Project and otherwise comply with the parties' Contract. JSB commenced the Arbitration by filing a claim with the ICC in December 2011. The ICC accepted the claim and captioned the Arbitration <u>Jindal Steel Bolivia S.A.</u> v. <u>Empresa Siderúrgica del Mutún</u>, Case No. 18398/CA, subsequently re-captioned as Case No. 18398/CA/ASM. The Arbitration was conducted in accordance with the Bolivian arbitration law, Law No 1770, the Arbitration and Conciliation Law, dated March 10, 1997 (*Ley 1770 de Arbitraje y Conciliación*) and the ICC Arbitration Rules.

13. Following JSB's commencement of arbitration with ESM, ESM and Bolivia launched a campaign against JSB which included bringing criminal claims against JSB's executives in Bolivia (one of whom sought asylum and currently resides in the U.S.) and seizing JSB's offices and property in Bolivia—indeed, on information and belief, ESM now occupies JSB's former offices in Bolivia, in addition to ESM's other use and enjoyment of former property and resources of JSB in Bolivia.

14. The ICC ultimately confirmed the appointment of Mr. Joseph Tirado as JSB's party-appointed arbitrator and the appointment of Mr. Hernando Díaz Candia as Respondent's party-appointed arbitrator, and then appointed Mr. Roque Caivano to serve as President of the three-member panel (the "Tribunal"). (Copies and certified English translations of the letters of appointment are attached to the Hamilton Decl. as Exs. 2 and 3.)

15. In the Arbitration, JSB claimed for recovery of the amounts of the guarantees against which ESM had moved in the amount of $18 million plus interest, and arbitration costs.

16. In the Arbitration, JSB was represented by White & Case LLP and Ferrere Abogados and ESM was represented by Gomm & Smith and Wayar & von Borries Abogados.

17. By Procedural Order No. 1, dated May 10, 2013, the Tribunal provided a procedural calendar for a preliminary phase of the Arbitration addressing the seat of arbitration and ESM's jurisdictional objections. (A copy and a certified English translation of Procedural Order No. 1 is attached to the Hamilton Decl. as Ex. 4.) Following briefing by the parties, and a hearing held in Buenos Aires, Argentina, the Tribunal issued Procedural Order No. 5, dated October 28, 2013, in which it rejected ESM's jurisdictional objections and determined the seat of arbitration as Santa Cruz de la Sierra, Bolivia. (A copy and a certified English translation of Procedural Order No. 5 is attached to the Hamilton Decl. as Ex. 5.) ESM did not seek to challenge the Tribunal's decision regarding jurisdiction.

18. The parties submitted multiple briefs and accompanying evidence regarding the merits of the case, and a hearing was held in Miami, Florida.

19. On August 6, 2014, the Tribunal issued a 71 page Award. (A copy and a certified English translation of the Award is attached to the Hamilton Decl. as Ex. 6.) The Tribunal ruled in favor of JSB, declaring that ESM had breached the Contract by moving against the guarantees at issue and ordering ESM to pay JSB the principal amounts of these guarantees, *i.e.*, $18 million, plus interest. Interest was ordered at 6% per annum as of April 19, 2010 for $9 million of the principal amount, and as of April 26, 2010, for the remaining $9 million. (Id. at 70).

B. ESM Seeks to Overturn or Annul the Award

20. In its first effort to undo the Award, on August 18, 2014, ESM filed an application with the Tribunal purporting to seek "clarification" regarding the Award but in fact seeking to re-arbitrate certain findings of the Tribunal, including JSB's standing. In an order dated August 29, 2014, the Tribunal rejected ESM's request to "clarify" the Award. (A copy and a certified

English translation of the Tribunal's August 29, 2014 order is attached to the Hamilton Decl. as Ex. 7.)

21. In its next effort to undo the Award, on September 22, 2014, ESM filed another application with the Tribunal, this time seeking to annul the Award. On October 7, 2014, the Tribunal issued an order denying ESM's application for annulment. (A copy and a certified English translation of the Tribunal's Procedural Order No. 12 addressing ESM's annulment application is attached to the Hamilton Decl. as Ex. 8. The two Tribunal decisions in support of the Award being the "Award Support Decisions.") The Tribunal determined that ESM's application seeking to annul the Award was not timely and therefore barred based on the applicable Bolivian arbitration law (*Ley 1770 de Arbitraje y Conciliación*, Law No. 1770, Arbitration and Conciliation).

22. As JSB learned only later, ESM then embarked on yet another effort to undo the Award. On information and belief, on or about October 10, 2014, just a few days after its annulment application was denied by the Tribunal, ESM commenced a proceeding in the First District Court on Civil and Commercial Matters of Santa Cruz, Bolivia (the "Bolivian Court") seeking to overturn the Tribunal's denial of ESM's annulment application (the "Bolivian Action").

23. JSB did not receive notice of the Bolivian Action, nor did ESM or Bolivian authorities advise JSB of such proceedings despite having other communications with JSB over a period of many months. The Bolivian Court did not provide JSB with notice of the Bolivian Action, nor did the Bolivian Court provide JSB with an opportunity to participate in the proceedings. Thus, JSB was not provided due process or a fair opportunity to participate in the

Bolivian Action with respect to ESM's collateral attack on the Tribunal's Award and the Tribunal's rejection of ESM's efforts to annul the Award.

24. On information and belief, on or about November 26, 2014, the Bolivian Court granted ESM's petition and overturned the Tribunal's Award Support Decisions.

25. On information and belief, the Bolivian Court had ex parte communications with ESM, the Tribunal and the ICC regarding the Bolivian Action.

26. On information and belief, on or about February 18, 2015, the Bolivian Court then issued another decision purporting to annul the Award. JSB had no opportunity to defend the Award before the Bolivian Court in the Bolivian Action. The February 18, 2015 decision went beyond the narrow scope of applicable law by reaching various merits issues which ESM had either unsuccessfully raised in the Arbitration or did not dispute in the Arbitration. (A copy and a certified English translation of the Bolivian Court's Award is attached to the Hamilton Decl. as Ex. 9.)

27. JSB learned of the Bolivian court's February 18, 2015 decision for the first time when Bolivian officials provided JSB representatives a copy of the decision at a meeting in Washington, D.C. on February 20, 2015. Not coincidentally, the decision was issued just prior to the previously scheduled meeting with JSB.

28. On information and belief, JSB had no right to appeal or otherwise challenge the Bolivian Court's decision to annul the Award, even though that decision was made without JSB's participation and went beyond the narrow scope of Bolivian law, the ICC Arbitration Rules and the Panama Convention.

29. JSB has a separate ongoing arbitration against ESM, the Bolivian state, and COMIBOL, concerning damages arising out of the failure of the Mutún Project, its termination,

ESM's enforcement of additional guarantees posted by JSB, and other breaches by each of the respondents in that case. That arbitration does not concern the guarantees that were at issue in the prior Arbitration and the Award which is the subject of this petition.

C. <u>Confirmation is Appropriate Under the Panama Convention Notwithstanding the Purported Annulment</u>

30. The Award is subject to the Panama Convention because it is an "arbitral award arising out of a legal relationship," which is considered "commercial" and not "entirely between citizens of the United States." 9 U.S.C. § 202. The Award could also fall under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). 9 U.S.C. § 302. Both the Panama and New York Conventions have been incorporated into the Federal Arbitration Act (the "FAA"). 9 U.S.C. §§ 201, 301. Where an arbitral award falls under both the New York and Panama Conventions, the Panama Convention will apply where the "majority of parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the [Panama] Convention" and are members of the Organization of American States (the "OAS"). 9 U.S.C. § 305. The Panama Convention applies here because JSB and ESM are Bolivian entities and Bolivia has both ratified the Panama Convention and is a member of the OAS.

31. This action is timely under 9 U.S.C. §§ 207, 302 because this Petition has been commenced within three years after the Award was made and none of the grounds for refusal of recognition or enforcement of an award as set out in Article V of the Panama Convention apply here.

32. This Court has the authority to confirm the Award notwithstanding the purported annulment of the Award by the Bolivian Court.

33.     The Court should not defer to the Bolivian Court's ruling in the Bolivian Action because the Bolivian Court's decision and annulment proceedings were manifestly unjust, fundamentally unfair and did not provide JSB with due process.  Accordingly, it would violate U.S. public policy and applicable international norms for this Court to defer to the Bolivian Court's ruling.

34.     The Bolivian Court's ruling in the Bolivian Action is also contrary to Bolivian law.  As the Tribunal properly determined, ESM's annulment application was not timely filed and therefore barred.   The Bolivian Court then compounded its error by going beyond the narrow scope of applicable law by reaching various merits issues which ESM had either unsuccessfully raised in the Arbitration or did not dispute in the Arbitration.

## CONCLUSION

WHEREFORE, Petitioner JSB respectfully requests that, pursuant to 9 U.S.C. §§ 207, 302, 304 and 305, an order be made: (a) confirming and recognizing the Award issued in the Arbitration; (b) directing entry of judgment in accordance therewith, plus interest and costs; and (c) awarding Petitioner such other and further relief as the Court deems just and proper.

Dated: August 4, 2017

                                    WHITE & CASE LLP

                                    By: /s/ Jonathan C. Hamilton_____

                                        Jonathan C. Hamilton  (D.C. Bar No. 484724)
                                        701 Thirteenth Street, NW
                                        Washington, DC 20005
                                        (202) 626-3600

                                        Gregory M. Starner (D.C. Bar. No. 496180)
                                        Owen C. Pell
                                        1155 Avenue of the Americas
                                        New York, New York  10036

       (212) 819-8200

       Rafael Llano Oddone
       Torre del Bosque – PH
       Blvd. Manuel Avila Camacho #24
       Col. Lomas de Chapultepec
       11000 México, D.F.
       México
       + 55255 5540 9600

       *Attorneys for Petitioner*
       *Jindal Steel Bolivia S.A.*